UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WEYSHIRA OLIVER,

    Plaintiff,

v.

ALEJANDRO N. MAYORKAS,
SECRETARY, UNITED STATES
DEPARTMENT OF HOMELAND
SECURITY,

    Defendant.

Case No. 21-12052
Honorable Shalina D. Kumar
Magistrate Judge Elizabeth A. Stafford

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 45) AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF NO. 46)**

Plaintiff Weyshira Oliver sues defendant Alejandro N. Mayorkas, Secretary of the United States Department of Homeland Security (DHS), alleging that the U.S. Customs and Border Protection (CBP), a DHS agency and Oliver's employer, retaliated and discriminated against him based on his disability, race, age, and gender. ECF No. 41.

Defendant moves for summary judgment on all claims, and Oliver does the same on his retaliation claim. ECF Nos. 45, 46. The motions have been fully briefed and do not require a hearing. *See* E.D. Mich. LR 7.1(f)(2).

For the reasons below, the Court grants defendant's motion and denies Oliver's motion.

I.     **Background**

Oliver works for CBP as a Supervisory Customs and Border Protection Officer (SCBPO) at the Port of Detroit (the "Port"). ECF No. 45-2, PageID.1081. Among other things, a SCBPO must carry a firearm, work long hours, be able to drive, and work on a shift and rotational basis. ECF No. 45-3. After SCBPOs select their preferred shift for the upcoming year, shift assignments are made and inputted into a scheduling system that generates a schedule showing each SCBPO's shift for the upcoming year. ECF No. 45-4, PageID.1144; ECF No. 37-2, PageID.785; ECF No. 45-5, PageID.1160-61.

Since becoming an SCBPO, Oliver always selected and worked the midnight shift, which runs from 10:00 p.m. to 8:00 a.m. ECF No. 45-2, PageID.1082. But beginning in 2018, CBP required all midnight shift SCBPOs like Oliver to periodically rotate to the day or afternoon shift three times a year. ECF No. 45-7, PageID.1217; ECF No. 45-2, PageID.1086.

In January 2018, Oliver sent an email to the Port's chief of staff Adam Streetman stating that Oliver had been diagnosed with "shift work / sleep disorder" and asking Streetman to file a medical record. ECF No. 45-8.

Then in March 2018, Oliver sent an email to Streetman asking for an accommodation to avoid working day shifts as required under the mandatory rotation because, due to Oliver's sleep disorder, rotating shifts would be "extremely disruptive" and could result in "serious health conditions." ECF No. 45-9.

In an April 2018 email, CBP temporarily granted Oliver's accommodation request to remain working midnights, and Streetman requested additional medical documentation to support Oliver's request, as he had done for other employees seeking accommodations. ECF No. 45-10; ECF No. 45-5, PageID.1191; ECF No. 45-6, PageID.1211; ECF No. 45-11, PageID.1227; ECF No. 45-12, PageID.1245. Oliver submitted a letter from his medical provider stating that Oliver was diagnosed with severe obstructive sleep apnea in 2015. ECF No. 45-13. The letter stated that in the same year, Oliver stopped treating his condition through CPAP therapy, which involves using a mask "when ever [sic] he sleeps" to improve his sleep quality, and that the long-term risks of untreated obstructive sleep apnea included "driving and work-related accidents." *Id.*

Upon receiving Oliver's medical documentation indicating that Oliver may not be treating his severe sleep apnea properly and posed increased accident risk as a result, Streetman gave the information to Port

management to decide how to proceed. ECF No. 37-3, PageID.870, 873. After Port management decided further review was required, the CBP's Medical Fitness Branch received Oliver's medical information for review and determined that Oliver should undergo a fitness for duty exam.[1] ECF No. 37-3, PageID.872; ECF No. 45-16.

As part of the fitness for duty exam, CBP requested additional medical documentation from Oliver. Oliver submitted progress notes from his sleep clinic visits, and the notes indicated that Oliver "has not been using PAP therapy" because he "does not feel he needs the PAP." ECF No. 45-18, PageID.1264. Oliver then saw an independent medical examiner in Spring of 2019. ECF No. 45-2, PageID.1090. That examiner had expertise in sleep disorders and, based on Oliver's self-reports and his CPAP machine data, found that Oliver "is not being compliant" with his treatment and "[n]ot adhering to the proper treatment . . . can lead to hypersomnolence and therefore interfere with job performance." ECF No. 45-19, PageID.1290-95. The examiner found Oliver unfit for duty "since he

---

[1] CBP can require a SCBPO to report for a FFDE "[w]henever the agency has a reasonable belief, based on objective evidence, that there is a question about an employee's continued capacity to meet the medical standards or physical requirements" of the position. *See* 5 C.F.R. § 339.301(b)(3). A FFDE may arise out of a request for reasonable accommodation because medical information is often submitted during that process. ECF No. 45-14, PageID.1252.

is not compliant with his treatment of his obstructive sleep apnea." *Id.* at PageID.1296. Another independent medical examiner reviewed that finding and agreed that Oliver was unfit for duty based on his treatment noncompliance. *Id.* at PageID.1287-89.

In June 2019, the Port issued a letter informing Oliver that he was found unfit for duty and presenting him with time-sensitive options to seek disability retirement, reassignment, or to resign, which is CBP's standard practice when an employee is found unfit for duty. ECF No. 45-20. As is also standard practice in such circumstances, CBP relieved Oliver of his authority to carry a firearm. ECF No. 45-21.

Oliver continued working at the same rate of pay but lost the ability to work overtime. ECF No. 45-2, PageID.1092. CBP put Oliver's supervisory employee performance evaluation on hold and instead issued a nonsupervisory employee performance evaluation. ECF No. 45-22. According to Oliver, CBP marked his employment status as "suspended." ECF 37-2, PageID.837.

Oliver failed to timely respond to the options letter. *See* ECF No. 45-23. However, the Port excused Oliver's failure to respond and informed Oliver that it would re-evaluate his fitness for duty if he showed compliance with his treatment. *Id.* Oliver submitted new documentation showing that he

started using his CPAP machine. ECF No. 45-24. After an independent medical examiner found Oliver fit for duty based on his compliance, the Port issued a letter informing Oliver that he was found fit for duty and returned Oliver to full duty in January 2020. ECF Nos. 45-25, 45-26.

With Oliver found fit for duty, Streetman resumed processing Oliver's March 2018 accommodation request, which had been put on hold due to the fitness for duty exam. ECF No. 45-27; ECF No. 45-5, PageID.1194. The parties had a formal interactive dialogue, and CBP formally granted Oliver's accommodation request in July 2020. ECF Nos. 45-28, 45-30. Up until that time, CBP allowed Oliver to remain working the midnight shift, and upon Oliver's email, Streetman corrected Oliver's computer-generated schedule to accurately reflect a midnight shift. ECF No. 45-30; ECF No. 45-2, PageID.1108; ECF No. 45-2, PageID.1115.

## II.     Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reviewing a motion for summary judgment, the court must "view the factual evidence and draw all reasonable inferences in favor of the non-moving party." *Williams v. Mauer*, 9 F.4th 416, 430 (6th Cir. 2021). The court must ultimately

determine "whether the evidence presents a sufficient factual disagreement to require submission of the case to the jury, or whether the evidence is so one-sided that the moving parties should prevail as a matter of law." *Payne v. Novartis Pham. Corp.*, 767 F.3d 526, 530 (6th Cir. 2014).

The moving party bears the initial burden of "informing the district court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). If the moving party carries its burden, the non-moving party "must come forward with specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). That is, the non-moving party must make an affirmative showing with proper evidence and must "designate specific facts in affidavits, depositions, or other factual material showing 'evidence on which the jury could reasonably find for the [non-movant].'" *Brown v. Scott*, 329 F. Supp. 2d 905, 910 (E.D. Mich. 2004). Mere allegations or denials of the non-movant's pleadings will not satisfy this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 251.

"When, as here, there are cross-motions for summary judgment, the Court considers them separately, and it is not necessary that either party is

entitled to summary judgment . . . ." *Peatross v. Liberty Mutual Personal Ins. Co.*, 575 F. Supp. 3d 887, 891 (E.D. Mich. 2021) (citing *Ohio State Univ. v. Redbubble, Inc.*, 989 F.3d 435, 442 (6th Cir. 2021)). When considering the plaintiff's motion, the evidence is viewed in the light most favorable to the defendant, and the plaintiff bears the burden to show that it is entitled to judgment as a matter of law. *Id*. The opposite is true when considering the defendant's motion. *Id*.

### III.  Analysis

#### A. Disability Discrimination (Count II)

Oliver claims disability discrimination under the Rehabilitation Act, 29 U.S.C. § 791 *et seq.*, based on defendant's alleged failure to accommodate. To establish a prima facie failure to accommodate claim under the Rehabilitation Act, a plaintiff must show that (1) he was disabled; (2) he was qualified for the position; (3) the agency was aware of his disability; (4) an accommodation was needed; and (5) the agency failed to provide the necessary accommodation. *Gaines v. Runyon*, 107 F.3d 1171, 1175 (6th Cir. 1997). Where, as here, a plaintiff also claims the failure to engage in the interactive process,[2] the plaintiff must first establish a prima

---

[2] The interactive process is a mandated, "individualized inquiry" into whether an employee's disability disqualifies him from a particular position. *Rorrer v. City of Stow*, 743 F.3d 1025, 1040 (6th Cir. 2014). That inquiry

facie case for failure to accommodate. *Rorrer v. City of Stow*, 743 F.3d 1025, 1041 (6th Cir. 2014); *Cheatham v. Postmaster Gen. of United States*, No. 20-4091, 2022 WL 1073818, at *4 (6th Cir. Apr. 11, 2022) ("[E]xamination of the interactive process is only required after the plaintiff has established a prima facie case that the employer has failed to accommodate her.").

Here, defendant provided the necessary accommodation. It is undisputed that CBP granted an interim accommodation allowing Oliver to work only the midnight shift, as Oliver requested. ECF Nos. 45-9, 45-10, 45-27, 45-30. Oliver was never required to work the day shift, and the interim accommodation remained in effect until CBP formally approved Oliver's accommodation. ECF No. 45-30. Although, as Oliver emphasizes, defendant's scheduling system assigned day shifts to Oliver seven times over three years, each time Streetman corrected Oliver's schedule after Oliver emailed him. ECF No. 45-2, PageID.1115. And at no point after he requested an accommodation did Oliver work a day shift. ECF No. 45-2, PageID.1108. Despite his burden to do so, Oliver fails to explain how,

---

requires good faith participation by the employer and employee "to identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations" so that the employer does not disqualify the employee based on "stereotypes and generalizations about a disability." *Id.*

despite these undisputed facts, defendants denied him an accommodation. *See Gaines*, 107 F.3d at 1175. Because no reasonable jury can find based on the undisputed evidence that Oliver was denied a necessary accommodation, defendant is entitled to summary judgment in its favor on Oliver's disability discrimination claim.

### B. Race, Age, and Gender Discrimination (Counts I, III, IV)

Oliver alleges race, age, and gender discrimination under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, as well as age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* Where, as here, a plaintiff does not present direct evidence of discrimination, the plaintiff must proceed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Smith v. City of Toledo*, 13 F.4th 508, 514 (6th Cir. 2021). That framework proceeds in three steps: Oliver must first make out a prima facie case of discrimination; if he does, the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for its actions; and the burden then shifts back to Oliver to show by a preponderance of the evidence that defendant's reason "was not its true reason, but merely a pretext for discrimination." *Id.* at 515 (citation omitted). "The ultimate burden

of persuasion remains at all times with [Oliver]." *See Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir. 2001).

To make out a prima facie case, Oliver must show that (1) he is a member of a protected group; (2) he was subjected to an adverse employment decision; (3) he was qualified for the position; and (4) similarly situated non-protected employees were treated more favorably. *See Smith*, 13 F.4th at 515 (citing *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 776 (6th Cir. 2016)); *Pelcha v. MW Bancorp, Inc.*, 988 F.3d 318, 326 (6th Cir. 2021) (citing *Geiger v. Tower Auto.*, 579 F.3d 614, 622-23 (6th Cir. 2009)).

Defendant argues that Oliver fails to identify similarly situated but more favorably treated employees. To meet the similarity requirement at the prima facie stage, "the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Miles v. S. Cent. Hum. Res. Agency, Inc.*, 946 F.3d 883, 893 (6th Cir. 2020) (citation omitted). While the plaintiff need not "show an exact correlation between themselves and others similarly situated," the "plaintiff must show

that she is similar to her proposed comparator in 'all relevant respects.'" *Id*. (citation omitted).

Here, Oliver proposes three comparators—Kristi Miller, Kelly Denham, and Andrea Williams. Those three are white, female CBP employees who, like Oliver, asked Streetman for shift accommodations due to health issues, submitted requested medical documentation, and received accommodations. ECF No. 37-7, PageID.945-46, 948; ECF No. 37-5, PageID.913-16; ECF No. 37-8, PageID.961, 963; ECF No. 45-12. Unlike Oliver, none of them underwent a fitness for duty exam, let alone faced consequences as a result of being found unfit for duty. ECF No. 37-7, PageID.948, 951; ECF No. 37-5, PageID.913, 920; ECF No. 37-8, PageID.961, 963.

However, Oliver differs from his proposed comparators in important ways. Oliver is the only midnight shift employee who sought to avoid the mandatory shift rotations due to a sleep-related condition. ECF Nos. 45-9, 45-13; ECF No. 45-5, PageID.1178. Moreover, unlike Oliver, none of his proposed comparators submitted medical documentation that stated her condition put her at an increased risk of driving and work-related accidents that raised safety concerns. Only Oliver submitted such medical documentation. *See* ECF No. 45-5, PageID.1178.

Oliver's differentiating circumstances distinguish defendant's treatment of Oliver from his comparators: Oliver's submitted medical documentation triggered the fitness for duty exam process, and due to that process, Oliver was found unfit for duty, lost his authority to carry a firearm, had his supervisory performance evaluation put on hold, and faced other consequences. ECF No. 45-5, PageID.1178, 1180; ECF Nos. 45-16, 45-20, 45-21; ECF No. 37-2, PageID.830, 832-33, 837. Because Oliver cannot show that his proposed comparators submitted similar medical records warranting equal treatment, Oliver fails to establish an essential element of his prima facie case. *See Miles*, 946 F.3d at 893. Accordingly, defendant is entitled to summary judgment in its favor on Oliver's race, age, and gender discrimination claims.

### C. Retaliation (Count V)

Oliver alleges that defendant retaliated against him for requesting an accommodation, in violation of the Rehabilitation Act. Where, as here, a plaintiff presents indirect evidence of retaliation under the Rehabilitation Act, the same burden-shifting analysis applicable to discrimination claims applies: First, Oliver must make out a prima facie case of retaliation; second, defendant must proffer a legitimate business reason for its actions;

last, Oliver must show that defendant's proffered reason is pretext for retaliation. *See Gribcheck*, 245 F.3d at 550.

To establish a prima facie case of retaliation under the Rehabilitation Act, a plaintiff must prove that (1) he engaged in protected activity, (2) the defendant knew of his protected activity, (3) the defendant then took an adverse employment action against him, and (4) there was a causal connection between his protected activity and the adverse action. *Id.* at 550.

Defendant argues that Oliver cannot show adverse employment action. To show adverse employment action, a plaintiff must show that "a reasonable employee would have found the challenged action materially adverse, which in this [retaliation] context means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006). "The significance of any given act of retaliation will often depend upon the particular circumstances. Context matters." *Id.* at 69. Accordingly, the Court focuses on "the materiality of the challenged action and the perspective of a reasonable person in the plaintiff's position," "screen[ing] out trivial conduct while effectively capturing those acts that are likely to dissuade employees from complaining . . . about discrimination." *Id.*

Here, Oliver fails to carry his burden of demonstrating that any of defendant's actions are likely to dissuade a reasonable worker from claiming discrimination. Without explanation, Oliver asserts that defendant's "action in this instant matter described hereinabove, constitute the kind of actions by an employer that would be reasonably likely to deter a charging party or others from engaging in protected activity such as that engaged in by Plaintiff herein." ECF No. 46, PageID.1365. That assertion rings hollow, as Oliver offers no explanation and concedes that a request for medical documentation and a fitness for duty exam are not adverse actions.

Even if, as Oliver suggests, defendant's actions altogether amount to adverse action, Oliver fails to demonstrate those actions' total dissuasive effect on a reasonable worker. The Court fails to see such an effect, where defendant's actions under undisputed circumstances include (1) the grant of an interim accommodation, allowing Oliver to work the midnight shift only, as he requested, ECF No. 45-30; ECF No. 26-1, PageID.276; (2) the order for a fitness for duty exam based on Oliver's submitted documentation indicating an increased accident risk due to his voluntary treatment noncompliance, ECF Nos. 45-13, 45-16; ECF No. 27-18, PageID.536; (3) the determination that Oliver is unfit for duty based on two

independent examiners finding a lack of fitness due to Oliver's choice not to comply with his treatment, ECF Nos. 45-19, 45-20; and (4) the return of Oliver to full duty after he showed compliance with his treatment, ECF Nos. 45-25, 45-26.

The Court finds that defendant's justified actions would not deter a reasonable person in Oliver's shoes from claiming discrimination. *See Gipson v. Tawas Police Auth.*, 794 F. App'x 503, 508 n.6 (6th Cir. 2019) (holding in retaliation context that valid medical exam requested for legitimate business reasons was not adverse employment action); *Place v. Abbott Labs.*, 215 F.3d 803, 810 (7th Cir. 2000) (holding same unless exam showed employee was fit to return to work but employer still barred employee from doing so).

At bottom, Oliver fails to show that defendant took an adverse employment action against him, and thus Oliver fails to make out a prima facie case of retaliation. *See Gribcheck*, 245 F.3d at 550. Accordingly, defendant is entitled to summary judgment in its favor on Oliver's retaliation claim.

## IV. Conclusion

For the reasons above, the Court **GRANTS** defendant's motion for summary judgment (ECF No. 45) and **DENIES** Oliver's motion for partial summary judgment (ECF No. 46).

Dated: March 21, 2024

s/ Shalina D. Kumar
SHALINA D. KUMAR
United States District Judge